T.C. Memo. 1999-31

UNITED STATES TAX COURT

GEORGE R. AND DONELLE C. HAWTHORNE, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket Nos. 5695-97, 18426-97.    Filed February 2, 1999.

George R. and Donelle C. Hawthorne, pro sese.

<u>Katherine Holmes Ankeny</u> and <u>J. Robert Cuatto</u>, for
respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

CHIECHI, <u>Judge</u>:  Respondent determined the following defi-
ciencies in petitioners' Federal income tax (tax):

| Year | Deficiency |
|------|-----------|
| 1992 | $265 |
| 1993 | 5,116 |
| 1994 | 3,094 |

The issues remaining for decision are:

(1)  Did petitioners erroneously include in dividend income in their tax returns (returns) for 1992 and 1993 cash distributions (cash distributions) received during those years on certain stock?  We hold that they did not except to the extent stated herein.

(2)  Did petitioners erroneously include in dividend income in their returns for 1992, 1993, and 1994 dividends in stock received during those years under dividend reinvestment programs? We hold that they did not.

(3)(a)  Should respondent's determination with respect to certain interest income reported by petitioners in Schedule C of their return for 1992 be sustained?  We hold that it should.

(b)  Should respondent's determinations with respect to the expenses claimed by petitioners in Schedules C of their returns for 1992, 1993, and 1994 be sustained?  We hold that they should.

## FINDINGS OF FACT[1]

Some of the facts have been stipulated and are so found.

Petitioners resided in Santa Fe, New Mexico, at the time the petition was filed.

Petitioners filed joint returns for 1992, 1993, and 1994.

---

[1]  Unless otherwise indicated or needed for clarity, our Findings of Fact and Opinion pertain to 1992, 1993, and 1994, the years at issue.

Cash Distributions on Certain Stock

Cash Distributions From Gulf States Utilities Company

During 1992, petitioner George R. Hawthorne (Mr. Hawthorne) owned shares of two classes of preferred stock of Gulf States Utilities Company (Gulf States). During 1992, Gulf States, which had not paid any dividends to its preferred stockholders since December 15, 1986, paid Mr. Hawthorne (1) $14,454 with respect to the shares of one of the classes of Gulf States preferred stock that he owned and (2) $12,648 with respect to the shares of the other class of Gulf States preferred stock that he owned, or a total of $27,102. Gulf States reported the total amount that it paid to Mr. Hawthorne as "Ordinary dividends" in Form 1099-DIV for 1992. In their 1992 return, petitioners included the amount reported in that form as dividend income.

A letter dated June 19, 1992, from Entergy Corporation (Entergy) to "Fellow Stockholder" stated in pertinent part:

> Entergy Corporation and Gulf States Utilities Company entered into a definitive agreement on June 5, 1992, providing for the combination of the two companies.
> * * *
>
> Under the terms of the agreement, Entergy and GSU will form a new holding company that will acquire all of the common stock of Entergy and GSU. The new holding company, which will be renamed "Entergy," will own all of the common stock of GSU * * *.
>
> Completion of the transaction is subject to, among other things, the approval of the common stockholders of Entergy and GSU and the receipt of all required governmental and regulatory approvals. * * *
>
> In the transaction, GSU common stockholders can elect to receive $20 in either cash or shares of common stock of the new holding company for each share of GSU common stock. The maximum amount of cash to be paid to GSU

common stockholders is $250 million, and the agreement provides for the proration of cash in the event that GSU stockholders elect, in the aggregate, to receive more cash than the $250 million.

     *       *       *       *       *       *       *

Each of the shares of GSU preferred stock outstanding at closing will continue as outstanding stock of GSU. Each share of Entergy common stock will be converted into the right to receive one share of new holding company common stock.

Cash Distributions From Centerior Energy
Corporation and Portland General Corporation

During 1993, Mr. Hawthorne owned shares of common stock of Centerior Energy Corporation (Centerior Energy). During that year, Centerior Energy paid Mr. Hawthorne $1,440 with respect to those shares, $830.09 of which it reported as "Ordinary dividends" in Form 1099-DIV CORRECTED for 1993 and $609.91 of which it reported in that form as "Nontaxable distributions". Mr. Hawthorne received Form 1099-DIV CORRECTED for 1993 after petitioners filed their 1993 return.

During 1993, Mr. Hawthorne owned shares of common stock of Portland General Corporation (Portland General). During that year, Portland General paid Mr. Hawthorne $240 with respect to those shares, all of which it reported as "NON-TAXABLE DISTRIBUTIONS" in a corrected copy of Form 1099-DIV for 1993.

Petitioners reported as dividend income in their 1993 return the entire respective amounts of $1,440 and $240 that Mr. Hawthorne received from Centerior Energy and Portland General during 1993.

Dividends in Stock Under Dividend Reinvestment Programs

Prior to the years at issue, petitioners enrolled in the respective dividend reinvestment programs of various companies in which they owned shares of stock. Pursuant to those programs, petitioners elected to receive dividends on those shares in stock, rather than in cash. Pursuant to those elections, petitioners received dividends in the amounts of $8,324.76, $8,123.74, and $8,759.81 during 1992, 1993, and 1994, respectively, that were paid in stock. They reported those respective amounts as dividend income in their returns for those years.

Schedule C Income and Expenses Claimed by Petitioners

Schedule C Income Claimed by Petitioners

Around 1980, Mr. Hawthorne sold a motel and reported no gain from that sale. Pursuant to the terms of the real estate contract relating to that sale, Mr. Hawthorne received $1,957.68 in interest income during 1992. Petitioners reported that income in Schedule C of their 1992 return. Petitioners did not report any other income in that Schedule C or in the Schedules C of their 1993 and 1994 returns.

Schedule C Expenses Claimed by Petitioners

Mr. Hawthorne owned one or more real properties (properties) in different locations throughout the United States, including Cape Coral, Florida; Pagosa Springs, Colorado; and Elephant Butte, Santa Fe, and Albuquerque, New Mexico. Mr. Hawthorne and petitioner Donelle C. Hawthorne (Ms. Hawthorne) owned one property in Cape Coral, Florida, as community property. At least

certain of the locations in which the properties were located were vacation areas. Mr. Hawthorne also owned certain mineral rights in property located in Ohio.

During the years at issue, Mr. Hawthorne did not sell any of the properties or advertise any of them for sale. Throughout those years and thereafter to the time of the trial in this case, Mr. Hawthorne had not decided what he wanted to do with any of the properties (e.g., use as a vacation home, give away to family members, retain, or sell), although he preferred to give the properties away to family members, rather than pay tax on any gains that he would realize if he sold or otherwise disposed of them.

Although Mr. Hawthorne had not decided what he wanted to do with any of the properties, he performed a variety of services under the name "Hawthorne Enterprises" with respect to certain of those properties, for which he was not compensated. Those services included: (1) With respect to certain property in Florida, surveying the land and performing routine planning with local government and with contractors; (2) with respect to certain property in Colorado, installing a gas line and surveying the land for a sewer line and a driveway; and (3) with respect to certain property in New Mexico, installing a septic tank, sewer lines, electrical wiring, balconies, garage doors, and a shingled roof and building a fence and a driveway. Mr. Hawthorne also rented a warehouse in which he stored building materials used by Hawthorne Enterprises. In order to pay for the activities that

he conducted under the name Hawthorne Enterprises, Mr. Hawthorne deposited $1,000 every other month into a checking account in the name of Hawthorne Enterprises.

Petitioners claimed in Schedules C of their returns for 1992, 1993, and 1994 expenses that Mr. Hawthorne incurred under the name Hawthorne Enterprises totaling $13,337.59, $13,098.76, and $9,981.94, respectively. Included in the expenses claimed in Schedule C for 1992 were $716.32 for "Legal and professional services", $2,775.04 for "Taxes and licenses", and $3,106.06 for "Depreciation". Included in the expenses claimed in Schedules C for 1993 and 1994 were $3,621.18 and $2,064.25, respectively, for "Taxes and licenses" and $3,106.06 for "Depreciation".

In Schedules E of their 1992, 1993, and 1994 returns, petitioners reported rental income and various expenses with respect to certain real properties listed in those schedules, including $549.32 claimed in Schedule E of their 1992 return for "Legal and other professional fees" with respect to property identified as "315 Princeton S E, Albq".

Notices of Deficiency

In the notice of deficiency (notice) issued to petitioners for 1992, respondent, inter alia, disallowed all of the expenses that petitioners claimed in Schedule C of their return for that year because respondent determined that those expenses were not incurred in the operation of a trade or business. However, respondent allowed petitioners to include those disallowed Schedule C expenses as Schedule A deductions subject to appropri-

ate adjustments for the 2-percent adjusted gross income limitation for miscellaneous deductions under section 67(a)[2] and the 3-percent adjusted gross income limitation under section 68(a).[3] Respondent also determined, inter alia, in the notice for 1992 that certain interest income that Mr. Hawthorne received during that year and reported in Schedule C of petitioners' 1992 return is Schedule B interest income for that year.

In the notice issued to petitioners for 1993 and 1994, respondent, inter alia, disallowed all of the expenses that petitioners claimed in Schedules C of their returns for those years because petitioners did not establish that those expenses were ordinary and necessary expenses incurred in the ordinary course of business. Respondent did not allow petitioners to include any of those disallowed Schedule C expenses as Schedule A deductions for 1993 and 1994.

## OPINION

Petitioners bear the burden of proof on the issues presented. Rule 142(a); <u>Welch v. Helvering</u>, 290 U.S. 111, 115 (1933). Petitioners attempted to satisfy their burden of proof through testimonial and documentary evidence. Except for extremely limited testimony from Ms. Hawthorne, Mr. Hawthorne was

---

[2] All section references are to the Internal Revenue Code in effect for the years at issue. All Rule references are to the Tax Court Rules of Practice and Procedure.

[3] Respondent conceded at trial that $2,775.04 of real estate taxes that petitioners claimed in Schedule C of their 1992 return and that respondent allowed in Schedule A are not subject to the 2-percent adjusted gross income limitation for miscellaneous deductions under sec. 67(a).

the only witness. We found Mr. Hawthorne's testimony to be general, conclusory, and/or vague in certain material respects. Before turning to the various issues presented, we note that we have considered all of petitioners' arguments that are not discussed herein and find them to be without merit.

Cash Distributions on Certain Stock

Petitioners reported as dividend income (1) in their return for 1992 all cash distributions that Mr. Hawthorne received from Gulf States during that year and (2) in their return for 1993 all cash distributions that he received from Centerior Energy and from Portland General during that year. With respect to the cash distributions that Mr. Hawthorne received during 1992 from Gulf States, petitioners contend that those distributions are liquidating distributions, and not dividends. With respect to $609.91 of the cash distributions totaling $1,440 that Mr. Hawthorne received from Centerior Energy and all of the cash distributions that he received from Portland General during 1993, petitioners contend that those distributions do not constitute dividend, or any other kind of, income. That is because, according to petitioners, the respective payors of those cash distributions reported them in corrected Forms 1099-DIV as nontaxable distributions.

Turning first to the cash distributions that Mr. Hawthorne received from Gulf States during 1992 on the shares of preferred stock that he owned in that company, the record establishes that Gulf States reported those distributions in Form 1099-DIV as

dividends.  To support their position that those distributions are liquidating distributions, and not dividends, and that that form is wrong, petitioners rely principally on a letter to stockholders from Entergy, dated June 19, 1992.  That letter describes an agreement between Entergy and Gulf States to form a holding company that would acquire all of the outstanding common stock of Entergy and Gulf States and that would own all of the common stock of Gulf States after the closing of the transaction.  The letter in question stated in pertinent part:  "Each of the share of GSU [Gulf States] preferred stock outstanding at closing will continue as outstanding stock of GSU."  Thus, the preferred stockholders of Gulf States, including Mr. Hawthorne, remained as such after the transaction described in that letter was closed and were unaffected thereby.  On the present record, we find that petitioners have failed to show that the cash distributions that Mr. Hawthorne received during 1992 from Gulf States are not dividends.

Turning now to the respective cash distributions at issue that Mr. Hawthorne received during 1993 from Centerior Energy and from Portland General, which petitioners reported as dividend income in their 1993 return and which they now claim are not taxable, respondent does not dispute on brief that those distributions do not constitute dividend income.  However, respondent disputes petitioners' position that those distributions are not taxable.  According to respondent, the respective cash distributions at issue from Centerior Energy and from Portland General

constitute gains from the sale or exchange of property under section 301(c)(3)(A) because petitioners have failed to establish the respective bases that Mr. Hawthorne had in the shares of common stock which he owned in Centerior Energy and in Portland General. Consequently, according to respondent, there is no basis in any of those shares against which to apply the respective cash distributions at issue that he received from those companies pursuant to section 301(c)(2). We agree with respondent.[4]

Petitioners have not introduced any evidence regarding Mr. Hawthorne's respective bases in the shares of common stock of Centerior Energy and of Portland General which he owned and with respect to which those companies made cash distributions to him during 1993. On the record before us, we find that petitioners have failed to satisfy their burden of establishing that $609.91 of the cash distributions totaling $1,440 that Mr. Hawthorne received from Centerior Energy and all of the cash distributions that he received from Portland General during 1993 are not includible in petitioners' income for 1993. On that record, we

---

[4] We note that the corrected copy of Form 1099-DIV which Portland General sent to Mr. Hawthorne explained the tax treatment of amounts that were identified in that form as "NON-TAXABLE DISTRIBUTIONS", as follows:

> This part of the distribution is nontaxable because it is a return of your cost (or other basis). You must reduce your cost (or other basis) by this amount for figuring gain or loss when you sell your stock. But if you get back all your cost (or other basis), you must report future nontaxable distributions as capital gains, even though this form shows them as nontaxable. * * *

sustain respondent's position on brief that those distributions are gains from the sale or exchange of property. Sec. 301(c)(2) and (3)(A).

Dividends in Stock Under Dividend Reinvestment Programs

Prior to the years at issue, petitioners enrolled in the respective dividend reinvestment programs of various companies in which they owned shares of stock. Pursuant to those programs, petitioners elected to receive dividends on those shares in stock, rather than in cash. Pursuant to those elections, petitioners received dividends in the amounts of $8,324.76, $8,123.74, and $8,759.81 during 1992, 1993, and 1994, respectively, that were paid in stock. They reported those respective amounts as dividend income in their returns for those years. Petitioners now claim that their return positions for the years at issue were wrong and that those dividends in stock are not includible in their income for those years. Respondent disagrees.

Where dividends from a corporation are payable, at the election of a stockholder, in stock or property, the distribution of such dividends will be treated as a distribution of property to which section 301 applies. Sec. 305(b)(1). On the record before us, we find that the dividends in stock that petitioners received under dividend reinvestment programs constitute dividend income, as reported in their returns for the years at issue. Id.

Schedule C Income and Expenses Claimed by Petitioners

Schedule C Income Claimed by Petitioners

Around 1980, Mr. Hawthorne sold a motel and reported no gain from that sale. Pursuant to the terms of the real estate contract relating to that sale, Mr. Hawthorne received $1,957.68 in interest income during 1992, which petitioners reported in Schedule C of their 1992 return. Respondent determined in the notice that that interest income is Schedule B interest income for 1992. Petitioners contend that that determination is wrong.

On the record before us, we find that petitioners have failed to show that the interest income in question was attributable to the carrying on of a trade or business at the time around 1980 when Mr. Hawthorne sold the motel or at any other time. Accordingly we sustain respondent's determination in the notice that that interest income for 1992 is Schedule B interest income.

Schedule C Expenses Claimed by Petitioners

In Schedules C of their 1992, 1993, and 1994 returns, petitioners claimed expenses totaling $13,337.59, $13,098.76, and $9,981.94, respectively. Included in the expenses claimed in Schedules C for 1992 were $716.32 for "Legal and professional services", $2,775.04 for "Taxes and licenses", and $3,106.06 for "Depreciation". Included in the expenses claimed in Schedules C for 1993 and 1994 were $3,621.18 and $2,064.25, respectively, for "Taxes and licenses" and $3,106.06 for "Depreciation".

In the notice for 1992, respondent disallowed all of the expenses that petitioners claimed in Schedule C of their return

for that year because respondent determined that those expenses were not incurred in a trade or business. However, respondent allowed petitioners to include those expenses as Schedule A deductions subject to the 2-percent adjusted gross income limitation for miscellaneous deductions under section 67(a) and the 3-percent adjusted gross income limitation under section 68(a).[5] In the notice for 1993 and 1994, respondent disallowed all the expenses that petitioners claimed in Schedules C of their returns for those years because petitioners did not establish that those expenses were ordinary and necessary expenses incurred in the ordinary course of business. In that notice, respondent did not allow petitioners to include any of those disallowed expenses as Schedule A deductions.

Petitioners contend that respondent improperly disallowed the Schedule C expenses that they claimed for the years at issue. Petitioners also assert that they are entitled for 1992 to additional expenses of $323.97 and $200 for legal fees and engineering fees, respectively, that they did not claim in Schedule C of their return for that year. Respondent disagrees.

Deductions are strictly a matter of legislative grace, and petitioners bear the burden of proving that they are entitled to the deductions claimed. INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992). Section 162(a) allows a deduction for ordinary and necessary expenses paid or incurred during the taxable year

_____

[5] See supra note 3 for respondent's concession regarding the real estate taxes of $2,775.04 that petitioners claimed in Schedule C of their 1992 return.

in carrying on a trade or business. An activity qualifies as a trade or business if the taxpayer's primary purpose for engaging in the activity is for income or profit and the activity is performed with continuity and regularity. Commissioner v. Groetzinger, 480 U.S. 23, 35 (1987). A hobby does not qualify as a business. Id. Determining whether a taxpayer's activities rise to the level which constitutes "carrying on a business" requires an examination of the facts in each case. Higgins v. Commissioner, 312 U.S. 212, 217 (1941).

In determining the nature of a taxpayer's activities with respect to real property, courts consider the following factors:

> the nature and purpose of the acquisition of the prop-
> erty and the duration of the ownership; the continuity
> of sales or sales-related activity over a period of
> time; the volume and frequency of sales; the extent to
> which the taxpayer or his agents have engaged in sales
> activities by developing or improving the property,
> soliciting customers, and advertising; and the substan-
> tiality of sales when compared to other sources of
> taxpayer's income. * * *  [Polakis v. Commissioner, 91
> T.C. 660, 670 (1988).]

Although during the years at issue Mr. Hawthorne performed a variety of services relating to certain of the properties, for which he was not compensated, he did not sell, or advertise for sale, any of those properties during those years. Indeed, Mr. Hawthorne had not decided throughout the years at issue and thereafter to the time of the trial in this case what he wanted to do with the properties in question, although he preferred to give them away to family members, rather than pay tax on any gains that he would realize if he sold or otherwise disposed of them. On the record before us, we find that petitioners have

failed to show (1) that Mr. Hawthorne was engaged during the years at issue in carrying on a trade or business with respect to the properties in question within the meaning of section 162 and (2) that the claimed expenses are ordinary and necessary expenses paid or incurred in carrying on a trade or business within the meaning of that section. Consequently, we sustain respondent's determinations disallowing the deductions that petitioners claimed in Schedules C of their returns for the years at issue[6] and reject their position that they are entitled to additional Schedule C deductions for 1992 for legal and engineering fees.[7]

---

[6] Consistent with respondent's concession at trial with respect to the real estate taxes claimed by petitioners in Schedule C of their 1992 return, see supra note 3, respondent concedes on brief that if the Court were to find that the expenses claimed by petitioners in Schedules C of their returns for 1993 and 1994 are not deductible under sec. 162, the expenses that they claimed in those schedules for "Taxes and licenses", which consisted of real estate taxes, would be deductible as itemized Schedule A deductions that are not subject to the 2-percent adjusted gross income limitation for miscellaneous deductions under sec. 67(a).

[7] Even if petitioners had established that they are otherwise entitled under sec. 162 to the claimed Schedules C expenses for the years at issue, they have not established on the record before us that those expenses are currently deductible. See sec. 1.446-1(a)(4)(ii), Income Tax Regs.

With respect to the additional legal and engineering fees that petitioners are claiming for 1992, even if petitioners had shown that they are entitled under sec. 162 to those fees as Schedule C expenses, we find on the instant record that petitioners have failed to prove that they did not already claim those fees in Schedule C or Schedule E of their 1992 return.

With respect to the depreciation that petitioners claimed in Schedules C of their returns for 1993 and 1994, even if petitioners had established (1) that the properties were used in a trade or business or (2) that they were held for the production of income, which we find below they have not, we find on the present record that petitioners have not established their

(continued...)

Petitioners contend in the alternative that if the Court were to sustain respondent's determinations disallowing the expenses that they claimed in Schedules C of their 1993 and 1994 returns, they should be allowed to deduct those expenses as Schedules A deductions for those years. Respondent disagrees except for the real estate taxes conceded by respondent, see supra note 6.

Section 212(2) allows a deduction for all the ordinary and necessary expenses paid or incurred during the taxable year for the management, conservation, or maintenance of property held for the production of income. Whether property is held for the production of income is a question of fact to be determined from all the facts and circumstances. Sec. 1.212-1(c), Income Tax Regs. In order to be entitled to a deduction under section 212(2), the taxpayer must have a bona fide profit-making motive in holding the property in question. Riss v. Commissioner, 56 T.C. 388, 421 (1971), affd. in part and remanded 478 F.2d 1160 (8th Cir. 1973), and affd. sub nom. Commissioner v. Transport Manufacturing & Equip. Co., 478 F.2d 731 (8th Cir. 1973).

We have found that throughout the years at issue and thereafter to the time of the trial in this case Mr. Hawthorne had not decided what to do with the properties. On the present record,

---

[7](...continued)
respective bases in the properties and have not shown how any such bases are to be allocated between nondepreciable land and depreciable buildings. Consequently, they are not entitled under sec. 167 to depreciation deductions with respect to the properties for 1993 and 1994.

we find that petitioners did not prove that during the years at issue Mr. Hawthorne was holding those properties for the production of income.  We further find that, except for the real estate taxes conceded by respondent, see <u>supra</u> note 6, they are not entitled for 1993 and 1994 to deduct as Schedule A deductions the expenses that they claimed in Schedules C of their returns for those years.[8]

To reflect the foregoing and the concessions of the parties,

<u>Decisions will be entered</u>

<u>under Rule 155</u>.

---

[8]  In so holding, we reject petitioners' contention that they should be allowed to deduct as Schedule A deductions the Schedule C expenses that respondent disallowed for 1993 and 1994 because in the notice for 1992 respondent allowed petitioners to deduct as Schedule A deductions the Schedule C expenses that respondent disallowed for that year.  Respondent's determination for 1992 does not bind this Court for 1993 and 1994.